# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MORRIS SMITH, | No. 4:18-CV-00464 |
| Plaintiff, | (Judge Brann) |
| v. | |
| DEPUTY WARDEN HOOVER, *et al.*, | |
| Defendants. | |

## MEMORANDUM OPINION

### NOVEMBER 25, 2020

Plaintiff Morris Smith, who was previously a pre-trial detainee housed at the Clinton County Correctional Facility ("CCCF") in McElhattan, Pennsylvania, filed a complaint pursuant to 42 U.S.C. § 1983 alleging a First Amendment access to the courts claim, and conditions of confinement and racial discrimination claims under the Fourteenth Amendment.[1]  Presently before the Court are Defendants' motions for judgment on the pleadings and for summary judgment;[2] both are ripe for adjudication.  For the reasons that follow, the Court will grant the motions, dismiss the access to the courts and racial discrimination claims without prejudice, and enter summary judgment on the conditions of confinement claim.

---

[1]   Doc. 1.
[2]   Doc. 45.

## I.   FACTUAL BACKGROUND

### A.   Allegations in the Complaint

In the complaint, Plaintiff alleges that in the winter of 2017-2018, while in CCCF as a pre-trial detainee, he was housed in a cell that lacked heat in violation of the Fourteenth Amendment; he lacked access to the law library during this time in violation of the First Amendment; and that he was racially discriminated against in violation of Fourteenth Amendment.[3]  As to his claim of racial discrimination, Plaintiff explains that he filed an administrative review form regarding the lack of heat in his cell on January 11, 2018, and that on the same day two other white inmates also filed administrative review forms regarding the lack of heat.[4]  The following day, on January 12, 2018, the two white inmates were moved to another cell with heat, while Plaintiff was left in his same cell without heat.[5]

### B.   Undisputed Material Facts

Plaintiff was housed at CCCF as a pre-trial detainee from November 26, 2016, through April 13, 2018.[6]  At all times relevant to the complaint, Defendants Angela Hoover held the position of deputy warden, Stacey Bailey held the position of case manager, Jacqueline Moore and Darren Muther held the positions of lieutenant, and

---

[3]   *See* Doc. 1.
[4]   *Id.* at 7.
[5]   *Id.*
[6]   Doc. 46 at 1-2.

Gregory Brungard, Rachael Kenyon and Sean Winter held the positions of corrections officer at CCCF.[7]

Plaintiff was housed in Cell No. 16 in E Block from April 29, 2016, to March 6, 2018.[8] In late October 2017, Plaintiff complained to Defendant Brungard about the lack of heat in his cell.[9] After checking Plaintiff Smith's cell, Defendant Brungard confirmed that it was cold and gave Plaintiff an extra blanket.[10] The extra blanket was initially sufficient to alleviate the cold temperatures.[11]

During the winter of 2017-2018, Plaintiff complained to various corrections personnel, including Defendants Winter and Kenyon, about the lack of heat in his cell and they advised him that they would notify the maintenance department.[12] On January 4, 2018, Plaintiff sent an internal request form to the shift commander indicating his cell was cold.[13] On January 5, 2018, Defendant Bailey responded that maintenance has been notified and that the block officer will need to file a maintenance slip.[14]

---

[7] *Id.* at 2.
[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] *Id.* at 3.
[13] *Id.*
[14] *Id.*

On January 6, 2018, Plaintiff filed an administrative review form complaining of inadequate heat in his cell.[15] On or about that same day, two other inmates, non-parties McCormick and Baird, who are both white, also filed administrative review forms complaining of inadequate heat in their cell.[16] On January 6 and 7, 2018, Defendant Lieutenant Muther adjusted the heat in the other cells on E-Block.[17] When asked by Plaintiff about turning up the heat in his cell, Defendant Muther advised that "his heat was broken."[18]

On January 11, 2018, Defendant Hoover responded to Plaintiff's administrative review form, advising that, "[w]e were recently informed of the heat issue in this cell when temperatures are low. This will be resolved."[19]

Plaintiff contends that he suffered medical problems due to inadequate heat in his cell, including freezing cold hands and feet, arm pain, allergies, and difficulty breathing.[20] As to his complaint of freezing cold hands and feet, Plaintiff experienced numbness in his hands and feet.[21] As to his complaint of arm pain, he experienced an intermittent sharp stabbing pain in his arm in the vicinity of a steel

---

[15] *Id.*
[16] *Id.* at 4.
[17] *Id.*
[18] *Id.*
[19] *Id.*
[20] *Id.*
[21] *Id.* at 5.

rod implanted therein.[22]  It did not pain him every night.[23]  He had experienced this condition prior to being housed in Cell No. 16, but to a lesser degree.[24]  Once he left his cell and went to the day room, these complaints passed.[25]

As to his complaint of aggravation of his allergies, Plaintiff had seasonal allergies that were affected by changes in the weather.[26]  The main symptom of his allergies was congestion and mucus.[27]  He would use a nasal spray, Tylenol, and ibuprofen to address the symptoms.[28]  As to his complaint of difficulty breathing, this condition was a result of the aggravation of his allergies.[29]

Plaintiff also experienced pains in his chest; however, he had experienced this condition prior to being housed in Cell No. 16.[30]  He is not sure if this condition is related to the cold temperatures.[31]  He has had no lasting medical conditions or injuries from these complaints.[32]

---

[22] *Id.*
[23] *Id.*
[24] *Id.*
[25] *Id.*
[26] *Id.*
[27] *Id.*
[28] *Id.*
[29] *Id.*
[30] *Id.* at 6.
[31] *Id.*
[32] *Id.*

On January 26, 2018, Plaintiff submitted an administrative review request via the prison mailbox in E-Block.[33] He noticed that Defendant Moore picked up the mail that day.[34] Plaintiff never received a response to that request.[35]

On March 6, 2018, Plaintiff Smith was moved to Cell No. 11 in E-Block.[36]

## II.   STANDARD OF REVIEW

### A.   Motion for Judgment on the Pleadings

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."[37] Under Federal Rule of Civil Procedure 12(c), judgment on the pleadings is only appropriate in favor of the moving party when that party "clearly establishes that no material issue of fact remains to be resolved" such that the party is "entitled to judgment as a matter of law."[38] When reviewing a motion for judgment on the pleadings, a court must view the facts in the plaintiff's complaint as true and draw all reasonable inferences in the plaintiff's favor.[39] In other words, a district court applies the same standard to a motion for

---

[33] *Id.*
[34] *Id.*
[35] *Id.*
[36] *Id.*  The Court presumes that this cell was properly heated.
[37] Fed. R. Civ. P. 12(c).
[38] *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008) (internal quotation omitted).
[39] *Allah v. Al–Hafeez*, 226 F.3d 247, 249 (3d Cir. 2000); *Snyder v. Daugherty*, 899 F. Supp. 2d 391, 396 (W.D. Pa. 2012).

judgment on the pleadings as a motion to dismiss pursuant to Rule 12(b)(6), but may also review the answer and instruments attached to the pleadings.[40]

### B. Motion for Summary Judgment

Summary judgment should be granted when the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law.[41] A disputed fact is material when it could affect the outcome of the suit under the governing substantive law.[42] A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.[43] The Court should view the facts in the light most favorable to the non-moving party and make all reasonable inferences in that party's favor.[44] When the non-moving party fails to refute or oppose a fact, it may be deemed admitted.[45]

Initially, the moving party must show the absence of a genuine issue concerning any material fact.[46] Once the moving party has satisfied its burden, the non-moving party, "must present affirmative evidence in order to defeat a properly

---

[40] *See Brautigam v. Fraley*, 684 F. Supp. 2d 589, 591–92 (M.D. Pa. 2010).
[41] Fed. R. Civ. P. 56(c).
[42] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[43] *Id.* at 250.
[44] *Hugh v. Butler County Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).
[45] *See* Fed. R. Civ. P. 56(e)(2); Local R. 56.1 ("All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.").
[46] *See Celotex Corp. v. Carrett*, 477 U.S. 317, 323 (1986).

supported motion for summary judgment."[47]  "While the evidence that the non-moving party presents may be either direct or circumstantial, and need not be as great as a preponderance, the evidence must be more than a scintilla."[48]  "If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c)," a court may grant summary judgment or consider the fact undisputed for purposes of the motion.[49]

If the court determines that "the record taken as a whole could not lead a rational trier or fact to find for the non-moving party, there is no 'genuine issue for trial.'"[50]  Rule 56 mandates the entry of summary judgment against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.[51]

Here, Plaintiff has failed to oppose the motion or refute the facts asserted in Defendants' statement of facts.  Pursuant to Federal Rule of Civil Procedure 56(e),[52] the Court has reviewed the facts contained in the statement of facts as well as each fact's citation to the record and will consider each fact undisputed.[53]  A thorough and comprehensive review of the record makes clear that no material fact is in

---

[47] *Anderson*, 477 U.S. at 257.
[48] *Hugh*, 418 F.3d at 267 (citing *Anderson*, 477 U.S. at 251).
[49] Fed. R. Civ. P. 56(e)(2)-(3).
[50] *Matushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).
[51] *Celotex Corp.*, 477 U.S. at 322.
[52] *See* Fed. R. Civ. P. 56(e)(1).
[53] *See* Fed. R. Civ. P. 56(e)(2).

dispute as to the conditions of confinement claim. As such, summary judgment is appropriate in this matter.

## III. DISCUSSION

In the motions, Defendants move for judgment on the pleadings regarding the First Amendment access to the courts claim and the Fourteenth Amendment racial discrimination claim, as well as for summary judgment regarding the Fourteenth Amendment conditions of confinement claim.

Plaintiff has brought his constitutional claims pursuant to 42 U.S.C. § 1983, which provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

"To establish a claim under 42 U.S.C. § 1983, [a plaintiff] must demonstrate a violation of a right secured by the Constitution and the laws of the United States [and] that the alleged deprivation was committed by a person acting under color of state law."[54]  "The first step in evaluating a section 1983 claim is to 'identify the

---

[54] *Moore v. Tartler*, 986 F.2d 682, 685 (3d Cir. 1993).

exact contours of the underlying right said to have been violated' and to determine 'whether the plaintiff has alleged a deprivation of a constitutional right at all.'"⁵⁵

The First Amendment protects a prisoner's fundamental constitutional right of access to the courts. That right, however, is not an independent right of access to adequate law libraries or persons trained in the law.⁵⁶ Rather, "[a] prisoner making an access to the courts claim is required to show that the denial of access caused actual injury."⁵⁷ This is because the right of access to the courts "rest[s] on the recognition that the right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court."⁵⁸ In other words, a prisoner claiming that he was denied access to the courts must allege an injury traceable to the conditions of which he complains.⁵⁹ An actual injury occurs when a prisoner demonstrates that a "nonfrivolous" and "arguable" claim was lost because of the denial of access to the courts.⁶⁰ "[T]he underlying cause of action . . . is an

---

⁵⁵ *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998)).
⁵⁶ *Lewis v. Casey*, 518 U.S. 343, 350-51 (1996).
⁵⁷ *Jackson v. Whalen*, 568 F. App'x 85, 87 (3d Cir. 2014) (quoting *Lewis*, 518 U.S. at 350).
⁵⁸ *Christopher v. Harbury*, 536 U.S. 403, 415 (2002).
⁵⁹ *Diaz v. Holder*, 532 F. App'x 61, 63 (3d Cir. 2013) (affirming dismissal of denial of access claims where plaintiff failed to connect alleged deficiencies in library to harm in underlying action).
⁶⁰ *Christopher*, 536 U.S. at 415.

element that must be described in the complaint."[61]  Furthermore, the right to access the courts may be satisfied if the plaintiff has an attorney.[62]

In his complaint, Plaintiff merely alleges that during the winter of 2017 to 2018, the law library was "off limits" to him.  Fundamentally missing from the complaint is any allegation of harm or injury that resulted from this lack of access.[63]  As such, Plaintiff has failed to state a First Amendment access to the courts claim.

Next, the Equal Protection Clause of the Fourteenth Amendment prohibits states from intentionally discriminating between individuals on the basis of race.[64]  "Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause."[65]  Intentional discrimination can be shown when (1) a law or policy explicitly classifies citizens on the basis of race, (2) a facially neutral law or policy is applied differently on the basis of race, or (3) a facially neutral law or policy that is applied evenhandedly is motivated by discriminatory intent and has a racially discriminatory impact.[66]  Discriminatory intent "implies that the decision-

---

[61] *Id.*
[62] *Diaz*, 532 F. App'x at 63 (citing *Bounds v. Smith*, 430 U.S. 817, 831 (1977); *Peterkin v. Jeffes*, 855 F.2d 1021, 1042 (3d Cir. 1988)).  *See also Prater v. City of Phila.*, 542 F. App'x 135, 137 n.4 (3d Cir. 2013).
[63] The Court notes that during this time, Plaintiff was able to file grievances regarding his cell conditions, and he was able to file this lawsuit.
[64] *Shaw v. Reno*, 509 U.S. 630, 642 (1993).
[65] *City of Cuyahoga Falls v. Buckeye Cmty. Hope Found.*, 538 U.S. 188, 194 (2003) (internal citations and quotations omitted).
[66] *Antonelli v. New Jersey*, 419 F.3d 267, 274 (3d Cir. 2005).

11

maker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group."[67]

Plaintiff has failed to meet his pleading burden here.  At best, Plaintiff alleges that as, a black man, he was not moved to a heated cell as quickly as two white inmates.  Lacking from the complaint is any allegation that this course of action was motivated "because of" race.  That sort of allegation is the necessary nexus to transform unfair happenstance into a plausible claim of racial discrimination. Without any such allegation, Plaintiff has failed to state a Fourteenth Amendment racial discrimination claim.

Generally, "plaintiffs who file complaints subject to dismissal . . . should receive leave to amend unless amendment would be inequitable or futile."[68]  Because it cannot be said that any attempt to amend would be futile, the Court will provide Plaintiff with a final opportunity to amend his complaint in conformance with this Memorandum Opinion.

Defendants also move for partial summary judgment regarding Plaintiff's conditions of confinement claim arising from the lack of heat in his cell.  In order to establish a constitutional violation, a conditions of confinement claim must be so reprehensible as to be deemed inhumane under contemporary standards or one that

---

[67] *Id.* (quoting *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979)).
[68] *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).

12

deprives an inmate of minimal civilized measures of the necessities of life.[69]  The claim against a prison official must meet two requirements: (1) "the deprivation alleged must be, objectively, sufficiently serious," and (2) the "prison official must have a sufficiently culpable state of mind."[70]  In prison condition cases, "that state of mind is one of 'deliberate indifference' to inmate health or safety."[71]

With such a claim, an evaluation of the context is necessary.  "Some conditions of confinement may establish . . . violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue blankets."[72]  Determining whether the conditions of confinement constitute "punishment" requires the Court to examine "the totality of the circumstances."[73]

In reviewing the undisputed facts in this matter, it is clear to the Court—and as Defendants admit—that in Plaintiff's Cell No. 16, the heat was not functioning, and that this fact became known to CCCF officials and staff.  In addition, as Plaintiff admits, at first, the extra blanket sufficed in lieu of heat to his cell.  However, the conditions apparently worsened, at which point Plaintiff filed various requests with

---

[69] *See Hudson v. McMillian*, 503 U.S. 1, 8 (1992).
[70] *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).
[71] *Id.*
[72] *See id.* at 304.
[73] *Tarapchak v. Lackawanna Cty.*, 173 F. Supp. 3d 57, 79 (M.D. Pa. 2016).

staff.  The undisputed facts also establish that CCCF officials and staff were responsive to Plaintiff's concerns, advising him that they were aware of the issue and that it would be corrected.  After a passage of time, Plaintiff was moved to another cell.  Relevant here, Plaintiff had access to the day room, which, the Court infers, had heat, and he also had an extra blanket in his bunk.

While the fact that Plaintiff had to experience a cold cell during the winter of 2017-2018 is regrettable, such circumstances cannot be said to violate the Fourteenth Amendment.  "[A] particular measure amounts to punishment when there is a showing of express intent to punish on the part of detention facility officials, when the restriction or condition is not rationally related to a legitimate non-punitive government purpose, or when the restriction is excessive in light of that purpose."[74]

Here, CCCF officials and staff appeared to be sympathetic to Plaintiff's plight, providing him with an extra blanket and advising him that the issue would be corrected.  When it apparently could not be corrected, he was moved to another cell.  Furthermore, as Defendants note, any discomfort to Plaintiff was temporal and at no point was Plaintiff exposed to a substantial risk of serious harm.  Plaintiff has suffered no injury from the cold cell aside from temporary discomfort.

Additionally, the Court can discern no intent to punish Plaintiff based on the undisputed facts provided, and when the totality of the circumstances is considered,

---

[74] *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007).

including the provision of an extra blanket, the statements that officials would have the heat fixed, the availability of the dayroom to Plaintiff, and that Plaintiff was eventually moved to another cell, together with the lack of harm to Plaintiff, the conditions of Plaintiff's confinement do not violate the Fourteenth Amendment. As such, summary judgment in favor of Defendants is proper on this issue as a matter of law.

## IV. CONCLUSION

Based on the foregoing, the motions for judgment on the pleadings and for summary judgment will be granted. The Court will grant Plaintiff leave to amend as to the First Amendment access to courts claim and the Fourteenth Amendment racial discrimination claim. The Court will grant judgment in favor of Defendants and against Plaintiff on the Fourteenth Amendment conditions of confinement claim.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge